ODELL and others *v.* STOUT and others.[1]

*(Circuit Court, S. D. Ohio, W. D.* October, 1884.)

1. PATENTS—REISSUES—ENLARGING CLAIMS—COMBINATION—PARTS.

The introduction into reissued letters patent of claims for the patentable parts of the combination claimed in the original letters, does not invalidate the reissued letters, if the patentee was the first inventor of the patentable parts claimed, although the original patent was for the combination alone, so described and claimed that the parts were not to be used separately, but together and simultaneously.

2. SAME—LIMITS OF RULE.

A patentee may, under proper circumstances, by reissue, enlarge his claims so as to make them extend to the limits of his invention, but he is bound by those limits.

3. SAME—WHEN CLAIMS MAY BE ENLARGED.

*Miller* v. *Bruss Co.* 104 U. S. 350, *James* v. *Campbell*, Id. 371, and later cases decided by the supreme court, distinctly recognize that the claims of an original patent may be enlarged by reissue to include the entire invention and its distinct patentable features; provided—*First,* that there be no unreasonable delay in applying for the reissue; and, *second,* that between the date of the original patent and that of the application for the reissue, rights which would be recognized in favor of others have not intervened.

4. SAME—WITHIN WHAT TIME APPLICATION TO BE MADE—WHAT IS A REASONABLE TIME.

There is no rule fixing the precise time within which application for a reissue must be made. What is a reasonable time, is a question, when a reissue is attacked, to be decided by the court upon the case presented. The rule is equitable, and therefore flexible, and to be applied according to equity.

5. SAME—DATE OF INVENTION—DRAWINGS.

Drawings made by an inventor, prior to his application for a patent, carry date of invention back, if reasonable diligence in applying for a patent is shown. But they will not supersede a patent granted to another in the mean time for the same invention.

6. SAME—REISSUES—EFFECT UPON OTHER CLAIMS OF INVALIDITY OF ONE.

The invalidity of one of the claims of a reissued patent does not invalidate the entire reissue, provided the invalid claim was made in good faith. Where it appears that claims in a reissued patent were made to broaden the invention, and thereby to cover intermediate inventions or improvements, the fraud may so vitiate all the claims in the reissued patent that all will be held to be void. But one claim in a reissue may be void without necessarily invalidating the other claims.

7. PATENT SUITS—INFRINGEMENT—ABANDONMENT—INJUNCTION.

If a defendant has, before suit brought, abandoned the manufacture and sale of an infringing machine, and the court is satisfied that the abandonment was in good faith, and final, an injunction ought not to be granted. But if the defendant, after such abandonment, has engaged in the manufacture and sale of another machine, which is also an infringing machine, and suit is brought for both infringements, the court will retain the whole cause under its control, and make the injunction and order to account to apply to the manufacture and sale of both.

8. PATENTS—ODELL PATENT FOR ROLLER-MILLS.

The first claim of reissued letters patent No. 10,139, granted to complainant Odell, June 22, 1882, for an improvement in roller-mills for crushing or grinding grain, middlings, and other material, *held* to be invalid; the second and fourth claims sustained. Complainants required to file a disclaimer of the first claim, before decree, and the decree for an injunction and account to be without costs.

[1] Reported by J. C. Harper, Esq., of the Cincinnati bar.

In Equity.

*Wood & Boyd,* for complainants.

*Stem & Peck* and *L. Hill,* for defendants.

Before MATTHEWS, Justice, and SAGE, J.

SAGE, J. Letters patent No. 250,934, for an improvement in roller-mills for crushing or grinding grain, middlings, and other material, were issued December 13, 1881, and reissued (No. 10,139) June 22, 1882, to the complainant Odell, who, (with the Stillwell & Bierce Manufacturing Company, his licensees,) sues for infringement. The object of the invention is stated in the specification to be to adjust the outer crushing or grinding rolls to or from the inner ones, and simultaneously to open or close the spouts or channels which control the discharge of grain from the hopper to the feed rolls.

The first claim in the reissued letters patent is as follows:

"In a roller-mill, the combination of the hopper-gate mechanism on both sides of the machine with a through shaft, lever mechanism connecting the parts to operate the gates simultaneously, and a single hand-lever, substantially as and for the purpose described."

The drawings show a double mill. The hopper is divided by a partition. Under each side of the hopper is a set of rolls to which the grain is delivered by means of a feed-spout. Gates or slides, moving vertically inside the hopper, open and close the aperture leading to the feed-spouts. These gates are connected by rods with a through shaft, J, located above the center of the space between the two sets of rolls, and parallel with them, and connected also with a single hand-lever, K. By the movement of this lever to or from the operator the gates are closed and opened.

Claim 2 is as follows:

"In a roller-mill, the combination with the adjustable rolls and journals of transverse shaft, *h,* through shaft, J, link mechanism connecting said shafts, and a single hand-lever, K, connected with the through shaft, for simultaneously adjusting both sets of rolls by a single lever movement, substantially as described."

The outer grinding rolls are journaled in vibrating arms, so connected on each side of the mill, by transverse horizontal shafts, with the hand-lever, K, that by the movement of that lever the rolls are thrown apart, (or spread,) or brought into contact, (or set,) simultaneously with the opening or closing of the hopper gates. The transverse shafts are provided with coiled springs, which form a yielding bearing for the outer rolls, so that they may give from their grinding position and permit the passage of any hard foreign substance which would otherwise injure the rolls.

Claim 3 is not involved.

Claim 4 is as follows:

"In a roller-mill the combination, with the adjustable crushing rolls and the gates or slides which control the passage of grain from the hopper, of a single through shaft, J, a single hand-lever, K, and mechanism connecting the crushing rolls and the gates or slides with the through shaft and hand-

lever, substantially as described, whereby a single movement of the lever simultaneously adjusts the rolls and the gates or slides, as set forth."

The fifth and sixth claims do not differ from the fourth, excepting in form of statement.

The defenses relied upon will be considered in the order convenient for the purposes of this decision. It is argued that the reissued letters are invalid for the reason that the original letters were neither invalid nor inoperative, nor is the specification of the original letters defective. It is admitted that the specification of the reissue does not differ substantially from that of the original, nor do the claims, excepting that the first and second claims of the reissue do not appear in the original, and they are introduced in the reissue, as defendants contend, for no other purpose than to enlarge the patent. The invention, it is said, was set forth in the original patent "as being for the combination, substantially, of two sets of mechanism,—one for controlling the gates, and the other for controlling the rolls,—both sets to be operated simultaneously." From the language of the original patent relating to this part of the mechanism, counsel for defendants quote:

"My invention relates to means for simultaneously adjusting one set of the crushing or grinding rolls to or from the other, and by the same movement to open or close the spouts or channels which admit the grain from the hopper to the feed-rolls. This feature of my invention consists in the combination of a through shaft, pivoted cranks, links, racks, and pinions,—all of which will be more fully explained in the description of the accompanying drawings."

Here, they say, "is a clear statement that the invention consists, not of gate-controlling mechanism alone, nor of roll-controlling mechanism alone, but of a through shaft connected with the gate-controlling mechanism and the roll-controlling mechanism so as to operate both simultaneously by the same movement." It is urged, therefore, that there could have been no inadvertence, accident, or mistake in setting forth this feature of the invention in the original patent, and that the original claim covers fully what is set forth. The granting of a reissue is *prima facie* evidence of inadvertence, accident, or mistake, as the granting of original letters is *prima facie* evidence of invention. This evidence may be overcome. It is not conclusive. The action of the commissioner of patents is not *res adjudicata.* *Cook* v. *Ernst,* 2 O. G. 89. He is not an officer in whom, under the constitution, judicial power can be vested. *Grant* v. *Raymond,* 6 Pet. 242. If he were, the proceedings for procuring original letters and reissues are *ex parte,* and would not estop defendants, charged as infringers, upon questions affecting the validity of the patent. But the statutes, prescribing his powers and duties, vest in the commissioner of patents a discretion which in some matters is final, and in others subject to review. The authorities are not uniform; but the later cases, and some of not so recent date, are in harmony with the ruling

made by Chief Justice MARSHALL in *Grant* v. *Raymond*, that the correct performance of all those preliminaries on which the validity of an original patent or of a reissued patent depends, is always examinable in the court in which a suit for its violation is brought. *Burr* v. *Duryee*, 1 Wall. 571; *Rubber Co.* v. *Goodyear*, 9 Wall. 795; *Miller* v. *Brass Co.* 104 U. S. 350; *James* v. *Campbell*, Id. 371; *Clements* v. *Odorless Excav. App. Co.* 109 U. S. 649; S. C. 3 Sup. Ct. Rep. 525; *Turner & S. Manuf'g Co.* v. *Dover Stamping Co.* 111 U. S. 326; S. C. 4 Sup. Ct. Rep. 401.

The complainant Odell testifies that when he first saw the original claims in the Patent-office Gazette, and before he received the patent, he was dissatisfied with them, and took immediate steps to procure a reissue. There is no other testimony on that subject. The language of the original patent does not exclude the possibility of inadvertent or accidental omission of claims. It is true that the claims in the original patent cover fully the construction described in the specification; but it does not follow that Odell might not, if he was the inventor, have claimed separately each of the patentable parts entering into the combination. Suppose he had first invented and patented the hopper-gate mechanism, and subsequently the roll-controlling mechanism, could he not then have patented that, and also taken out a patent for the combination of the two, although so connected to the through shaft that they must necessarily be operated simultaneously? In the combination covered by the claims in the original patent, there are, as was conceded on the hearing, two sets of mechanism, the one controlling the gates, the other the rolls. Either can be disconnected from the through shaft and the other operated singly. The patentee, it is said, does not wish to so operate them, and can not so operate them as they are combined in the patented improvement. True, but it frequently occurs that an inventor fails to perceive all or even the best uses to which his invention may be applied. Nevertheless, he is entitled to the benefit of all the uses to which it can be applied, no matter whether he or another conceived them. *Roberts* v. *Ryer*, 91 U. S. 157. In this case the defendants introduced evidence tending to prove that it is an advantage at times to control the rolls and the hopper-gate separately. That is a mere matter of opinion, which does not affect complainants' rights. The inventor is entitled also to a patent for his entire invention. He can not, as Mr. Justice BRADLEY says in *James* v. *Campbell*, 104 U. S. 378, "take a reissue for anything but the same invention described and claimed in the original patent." It is to be kept in mind, however, that enlarging the claim may be an entirely different thing from broadening the invention. He may, under proper circumstances, so enlarge his claim as to make it extend to the limits of his invention, but he is bound by those limits. He may not enlarge the invention.

If the inventor could not claim singly the parts of a combination capable of separate use, because he uses them in combination, or, to

state the proposition as counsel for defendants put it, because he does not desire the operation of any apart from the others, the result would be that each constituent of the combination would be free to the public. The mechanism for controlling the gates might be of great value operated separately, and the same might be true of the mechanism for controlling the rolls; but if the inventor is limited to a claim for the combination simply because, in his opinion, it adds to the value of each, and is an improvement to operate them simultaneously, it follows that he is compelled to abandon to the public a large part of the value of his invention. Such a construction is too narrow. We prefer the doctrine stated by Judge WOODRUFF in *Wheeler* v. *Reaper Co.* 10 Blatchf. 181, that he knew no rule "which forbids the inventor who has omitted to claim separate new devices, or severable and distinct combinations, in the original patent, making a surrender and taking reissues for the distinct combination or separate devices." "If the devices covered by the reissues were in fact new and useful, and if they are shown in the original specification, drawings, or model, then the patentee is entitled to secure the exclusive use of each separately, by a reissue embracing each."

*Miller* v. *Brass Co.* 104 U. S. 350, and *James* v. *Campbell,* Id. 370, do not sustain the proposition made on behalf of the defendants that a reissued patent is void if the claims of the original patent are expanded. These cases, and others of later date, distinctly recognize that the claims of an original patent may be enlarged, by reissued letters, to include the entire invention, or, in separate claims, the distinct patentable features of the invention; provided—*First,* that there be no unreasonable delay in applying for the reissue; and, *second,* that between the date of the original patent and the date of the application for the reissue, rights which would be recognized in equity in favor of others shall not have intervened. The supreme court calls attention to the rule "that the claim for a specific device or combination, and an omission to claim other devices or combinations apparent on the face of the patent, are in law a dedication to the public of that which is not claimed." The court says that this legal effect of the patent can not be revoked except by surrender and reissue on proof of inadvertence, accident, or mistake in framing the original specification or claim, without fraudulent or deceptive intention on the part of the patentee, and without laches or unnecessary delay. There is a suggestion in *Miller* v. *Brass Co.* of two years as the limit to the delay permissible, with a reference, by way of analogy, to the evidence of abandonment afforded by the inventor's consent to the public use of his invention for that length of time before his application for a patent; but there is no rule fixing a precise limit of time. The rule relating to abandonment is statutory, and therefore rigid, and to be applied according to its letter. The rule relating to reissues is equitable, and therefore flexible, and to be applied according to equity. What is a reasonable time is a question, when a reissue is attacked,

to be decided by the court upon the case presented; and, as we understand it, the supreme court has purposely avoided prescribing any rule which would interfere with the decision of each case upon the equities arising upon the facts of that case.

We do not think that it is apparent in this case, as it was in *Miller* v. *Brass Co.* and in *James* v. *Campbell*, that there was no inadvertence, accident, or mistake in the framing of the specification and claims of the original patent. On the contrary, precisely such an inadvertent omission as it is claimed by the complainants was supplied by the introduction of the first and second claims of the reissue, might be made by an inventor in whose mind the combination was the thing of greatest value. Moreover, in this case, the delay was but a little more than four months, and there is no averment in the answer, nor is there any evidence, that between the date of the original and that of the reissue any rights of others intervened. In the late case of *Wooster* v. *Handy*, 21 FED. REP. 51, decided by Mr. Justice BLATCHFORD, July 22, 1884, he says:

"The rule laid down by the supreme court is that where it is sought merely to enlarge a claim there must be a clear mistake and inadvertence, and a speedy application for the correction, with no unreasonable delay; that in such a case a patentee cannot wait until other inventors have produced new forms of improvement and then apply for such an enlargement of his claim as to make it embrace those new forms; and that when it is apparent from a comparison of the two patents that the reissue is made to enlarge the scope of the patent, the court may decide whether the delay was unreasonable, and the reissue therefore void. This view has been repeatedly asserted and applied by the supreme court in numerous cases decided since those in 104 U. S."

Upon the authority of these cases it is clear that the claim of a patent may be enlarged by a reissue if the patentee move promptly and no rights of others have intervened, and we are of opinion that in this case the delay was not unreasonable. See *Dryfoos* v. *Wiese*, 26 O. G. 640; S. C. 19 FED. REP. 315.

We come now to the defense of want of novelty; and, first, it is necessary to fix the date of Odell's invention. The application for his original patent was filed July 7, 1881, but he has introduced in evidence drawings made by him in a memorandum book which, he claims, establish that his invention was of earlier date. The first of these drawings was made September 17, 1878, and shows the roll-controlling mechanism, substantially as in his patent; the second, made May 14, 1879, shows a transverse shaft (operated by a hand wheel) with mechanism for controlling the gates or slides within the hopper; the third drawing, made in June, 1879, shows a sectional view of the roll-controlling mechanism, indicating clearly the through shaft, the transverse shaft with coiled spring, the hand-lever, and the connecting parts; the fourth drawing, dated July, 1880, shows a through shaft, with the gate or slide-controlling mechanism, substantially as in the patent. It is settled that "an invention relating to machinery may be exhibited either in a drawing or in a model, so as

to lay the foundation of a claim to priority, if it be sufficiently plain to enable those skilled in the art to understand it." *Loom Co.* v. *Higgins*, 105 U. S. 594. But this rule is to be taken with proper qualifications. Drawings may carry date of invention back if reasonable diligence is shown. *Kneeland* v. *Sheriff*, 18 O. G. 242. Making drawings of an idea is not invention, and is of no effect unless followed up. *Draper* v. *Potemska Mills*, 13 O. G. 276. Merely making drawings is not such an embodiment of invention as will defeat a subsequent patent. *Ellithorp* v. *Robertson*, 4 Blatchf. 307. The reasons for this qualification of the rule are well stated in section 61, Walker on Patents.

Between the date of the last drawing made by Odell and his application for a patent there was an interval of a year. In the mean time the Daverio American patent, the Poole, the Poole & Miller, and the Gray patents were issued. All these are in evidence for the defendants. The drawings made by Odell cannot be recognized as giving priority to his invention as against those patents, whatever might be their effect upon the decision of the question of want of novelty if those patents had not been issued. So far as the complainants are concerned, the defendants are not precluded by Odell's drawings from using any mechanism covered by any of the patents issued between the dates of the drawings and the date of Odell's application for his original patent. We have nothing to do, in this cause, with the question whether they infringe the rights of other patentees. *Detroit Lubricator Manuf'g Co.* v. *Renchard*, 9 FED. REP., is in point. We quote from the opinion of Mr. Justice MATTHEWS, on page 297:

"The defendants exhibit a drawing made by J. V. Renchard, which bears date August 10, 1876, and which, it is testified by him, was made on that day, and by others, that he showed it to them about that time. This antedates Parshall's application, but it fails to supersede his patent, for the reason that it seems well established in evidence that Renchard did not at that time prosecute the matter beyond the mere drawing. The drawing seems to exhibit a perfect machine in all its parts, and sufficiently to show the combination forming the subject of the present controversy, particularly the metallic oil cup, the siphon tube carrying the condensed water into the glass indicator, and the two chambers, condensing and oil, and directly united. Nevertheless, it is clearly proven that the defendant did not, in fact, construct an indicator in this form, and reduce it to actual use, until after it had been successfully accomplished by Parshall, nor until after the date of his patent. This mere drawing cannot, therefore, be allowed to have the effect of depriving Parshall of his title of being the first and original inventor."

The Daverio patent, issued in England, December 23, 1879, (to Simons,) and in this country, December 14, 1880, and the Gray patents, dated December 21, 1880, application filed February 16, 1880, are offered to anticipate the first claim in complainant's patent. In the Daverio patent a through shaft is shown, with mechanism for operating the two hopper gates or slides simultaneously from either side

of the machine. In the Gray patent is shown a through shaft with a lever or handle at each end, and mechanism for simultaneously closing or opening both gates or slides. In each of these patents the shaft is a transverse shaft, but the direction of the shaft is of no consequence in considering the first claim of complainant's reissued patent, which is "the combination of the hopper-gate mechanism on both sides of the machine with a through shaft, lever mechanism connecting the parts to operate the gates simultaneously, and a single hand-lever, substantially as and for the purpose described." The position of the shaft parallel with the rolls is important only when, by combination, the gate or slide-controlling mechanism and the roll-controlling mechanism are to be operated simultaneously by the movement of the hand-lever. But Odell chose to make a separate claim for the mechanism controlling the gates, and as a separate claim it must be construed independently of the claims for the combination of the gate-controlling and of the roll-controlling mechanism. Our conclusion is that the first claim of the reissue is invalid for want of novelty.

In anticipation of the second claim the defendants set up the Poole patent, No. 238,000, dated February 22, 1881; the Poole & Miller patent, No. 238,001, dated February 22, 1881; and the Gray patents, No. 235,761, dated December 21, 1880, and No. 238,677, dated March 8, 1881.

The Mechwart patent, dated December 20, 1881, application filed April 22, 1880, more than a year prior to Odell's original patent, has the outer rolls journaled upon movable arms, or levers, as they are termed in the specification, connected to weights, which, by gravity, keep the rolls together. These weights are raised, and the outer rolls released from contact with the inner, by a hand-lever operating upon them by means of a through shaft, and cranks, and chains at each side of the machine. The mill is provided with a separate device for shutting off the supply of grain from the hopper. Whether the mechanism in this mill for controlling the rolls anticipates Odell's second claim in his reissued letters depends upon whether the weights and connecting parts are the equivalent of the transverse shafts and the coiled springs of the Odell mill. It is in testimony, and such we find to be the fact, that the coiled springs form a yielding bearing for the outer rolls, permitting them to give and allow the passage of obstructions caught between the rolls. This is a great advantage, and one of the most valuable features of the roll-controlling mechanism of the Odell mill. The shaft is so constructed that the spring is not acted upon when the shaft, and by it and its connections the outer rolls, are moved by the hand-lever. When the rolls are set, the shaft holds them rigidly in position against everything but a hard, foreign substance passing between them. Then, and then only, the coiled spring is brought into play, and the outer roll recedes against the constantly increasing pressure of the spring, and suffers the obstruction to pass. The spring then instantly forces the outer roll back

into grinding position.  The weights and connected mechanism of the Mechwart mill do not form a yielding bearing.  In the specification of the Mechwart patent it is stated that "in case of any obstruction getting into the mill the pressure is thrown off instantly by turning the handle, m, [corresponding to the hand-lever in the Odell mill,] and revolving shaft, o, [a through shaft parallel with the rolls,] and its cranks at each side of the machine to raise the weights, h, by the chains, t, that connect the weights and cranks."  The inventor—and we must presume that he knew his own mill—did not understand that the weights formed a yielding bearing, acting automatically, as do the coiled springs, but did understand that the weights must be raised by the operator.  Even if the weights and connected mechanism form a yielding bearing, their action must be sluggish and uncertain compared with that of the coiled springs.  The difference is that between a dead weight and an elastic force, in a place where the elastic force is essential.  The Mechwart mill, therefore, does not anticipate the second claim of the complainant's reissued patent.

Neither the Poole nor the Poole & Miller patent has the yielding bearing.  In the Poole patent, when the rolls are set, they are so firmly held in position that something must break before an unyielding foreign substance can pass between the rolls.  In the Poole & Miller patent a toggle-joint is used.  The inner rolls are movable, being journaled in boxes which slide backward and forward in frames to which they are fitted.  When the toggle is straightened (or extended) these rolls are forced into grinding position, and there inflexibly held, until, by movement of a hand-lever, the toggle is thrown into a zigzag position, and then the rolls are forced apart by coiled springs, which have no other office.  The Gray patent, No. 235,761, relates exclusively to mechanism for controlling the hopper gates or slides.  These patents do not anticipate claim 2 of complainants' reissue.  In the Gray patent, No. 238,677 there are two through shafts, each parallel with the set of rolls over which it is placed, and connected, by eccentrics and transverse shafts, to movable arms, in the upper ends of which the outer rolls are mounted.  The transverse shafts are provided with coiled springs, forming yielding bearings, substantially as in complainants' patent.  The ends of the through shafts are provided with crank-arms pivoted to a connecting horizontal rod, serving as a hand-lever, by moving which from either side of the machine all the eccentrics are moved simultaneously, and the outer rolls thrown instantly into or out of operative position.  All the parts of this combination are old.  The claim is limited to the combination of the movable arms, the transverse shafts, the eccentrics, and the horizontal rod, by moving which the rolls are thrown apart or together, and, in our opinion, does not interfere with claim 2 of complainants' reissue, which is limited to a single through shaft and a hand-lever rotating it to operate the four transverse shafts simultaneously, and, by moving the pivoted journal arms, carrying the mov-

able rolls to spread or set the rolls. It follows that the second claim of complainants' reissued patent is sustained.

It was urged upon the hearing that the entire reissued patent must be held to be invalid if claims 1 or 2, or both, were found to be invalid. That does not follow. We are satisfied from the testimony that claim 1, which we hold to be invalid, was made in good faith in the honest belief that Odell was the original inventor of the combination covered by that claim. Where it appears that claims in a reissued patent were made to broaden the invention, and thereby to cover intermediate inventions or improvements, the fraud may so vitiate all the claims in the reissued patent that all will be held to be void. But one claim in a reissue may be void without necessarily invalidating the other claims. *Packing Co. Cases,* 105 U. S. 566.; *Gage* v. *Herring,* 107 U. S. 646; S. C. 2 Sup. Ct. Rep. 819. The invalidity of a claim in a reissued patent does not impair the validity of a claim reproduced from the original patent in the reissued patent. *Schillinger* v. *Greenway Brewing Co.* 20 O. G. 495; *Fetter* v. *Newhall,* 25 O. G. 502.

The fourth, fifth, and sixth claims of complainants' reissued patent are substantially reproductions of claims in the original patent. The fifth and sixth claims differ only in form from the fourth, and we therefore, and in accordance with a stipulation filed by counsel, consider only the fourth. The defendants rely upon the Wegman patent, April 7, 1883, application filed February 10, 1883, patented in England in 1879, to anticipate the fourth claim. We are of opinion that the English patent does not show in the drawings nor describe in the specification simultaneous operation of the roll-controlling and of the feed-controlling mechanism. The American patent, of date later than complainants' patent, can not be brought in to supply the deficiencies of the English patent. We therefore hold that the Wegman patent does not anticipate the fourth claim of complainants' reissued patent, which is sustained. There is no evidence that prior to Odell's invention the combination of mechanism for simultaneously controlling the gates and the rolls was known or used, and there is no doubt in our minds that it is a valuable and patentable improvement. *Loom Co.* v. *Higgins,* 105 U. S. 591.

The remaining question is whether the defendants are infringers of the second and fourth claims of the complainants' reissued patent. The defendants' mill—that which they were manufacturing when this suit was brought—is so constructed that, by means of a sleeve on the through shaft and an arm connected to the outside lever, journaled on this shaft, the gates or slides controlling the feed discharge may be moved without moving the rolls; and by moving the inside lever, which is attached to the through shaft, the roll-controlling mechanism is operated. Both levers may be grasped at the same time and moved together, and thus simultaneously adjust the rolls and the gates or slides. This mechanism is substantially al-

most identically, that of the complainants' mill, including the transverse shafts with the coiled springs, forming yielding bearings.

Prior to the bringing of this suit, and up to March, 1883, defendants manufactured another mill shown in the Livingston patent, No. 284,135, in which a single lever served to operate the through shaft and simultaneously move both sets of mechanism. An interference between Livingston, defendants' assignor, and Odell was decided in favor of Odell, March 31, 1883, and since that date the defendants have not manufactured nor sold that mill. The bill in this cause was filed June 6, 1883. If the complaint were only on account of the manufacture and sale of that mill, the case would not be one for injunction. The remedy at law would be complete. It is true, as urged by counsel for complainants, that it has been held that stopping infringement will not prevent an injunction. But the cases have been where the manufacture was stopped at or after the bringing of the suit, or the indications were that the defendants, having once been wrong-doers, were likely to be so again as soon as released from court. If a defendant has, before suit brought, abandoned the manufacture and sale of the infringing machine, and the court is satisfied that the abandonment was in good faith and final, the injunction ought to be refused, upon the principles of equity applicable to injunction. However, as we find that the defendants in this case are infringers, we think it well to retain the whole case under our control, and the injunction and order for an account may be made to apply to the manufacture and sale of both mills.

But the complainants must first file a disclaimer of the first claim of their reissued patent, and this decree must be without costs. See sections 4917, 4922, Rev. St. U. S., and *Gage* v. *Herring*, 107 U. S. 646; S. C. 2 Sup. Ct. Rep. 819.

Mr. Justice MATTHEWS stated that he concurred in the conclusion and in the reasoning of Judge SAGE's opinion.