### HAGGENMACHER v. NELSON et al.

(Circuit Court, E. D. Pennsylvania. June 22, 1898.)

#### No. 6.

1. PATENTS—VALIDITY OF REISSUE.
    A reissue in which all the claims of the original are literally reproduced, excepting one, which is predicated on the same invention as the original, but which expresses more clearly what would, under the ordinary doctrine of equivalents, be the legal effect of the original, is valid.

2. SAME—FLOUR-SIFTING APPARATUS.
    The Haggenmacher patents, reissue No. 11,252 (original No. 428,907) and No. 428,908, for "apparatus for sifting and sorting flour," construed, and

*held* valid and infringed,—the former as to claims 1, 2, 4, 5, 6, and 11, and the latter as to claims 1 and 2.

This was a suit in equity by Carl Haggenmacher against William T. Nelson and J. H. Small, co-partners as the McAnulty Mill Works, and John A. McAnulty, for alleged infringement of reissue patent No. 11,252, dated June 28, 1892 (original No. 428,907, dated May 27, 1890), and also letters patent No. 428,908, both issued to complainant, Carl Haggenmacher. In the specifications of the reissue the machine is described in part as follows:

"This invention relates to machines for sifting and sorting meal and flour, and it consists in the novel construction and combination of the parts, as hereinafter fully described and claimed. In the drawings, Fig. 1 is a front view of the complete machine. Fig. 2 is a side view of the same. Fig. 3 is a longitudinal section through the frame box R, and Figs. 4 and 5 are, respectively, a cross section and a plan view of same, partly in section. Figs. 6 to 13, inclusive, are detail plans and cross sections. * * *

*Fig. 1*

Fig. 2

"The frames, I, II, III, IV, V, rest superposed upon the bottom, b, of the box, R, and are inclosed by the sides, T, T'. and lid, d, secured together by any approved means. Each frame is provided with longitudinal guide slats, x, in line with the main direction of travel of the material, and with cross slats, y, at right angles to slats, x. For the purpose of turning over the material, every alternate slat, y, has a low ridge, u, extending from the end of it to the opposite slat, x, or to the box side. These ridges are of a height about equal to the depth of the material operated on, and are not shown in Figs. 5 to 9, to avoid confusion. Between every two ridges, u, the tops of the intervening slats, y, are extended to the opposite slat, x, or to the box side, forming bridges, v, and leaving a passage for the material under said bridges. These bridges strengthen the frames to which they are attached, and support the frames above them. The sifting surfaces, O, stretched under the frames, consist of perforated metal, or woven wire or silk fabric, while the collecting surfaces, L, consist of linen, or other similar close-woven or imperforate material. These surfaces are all fastened to the lower edges of

their respective frames. The traveling action of the slats, y, upon the material, is illustrated in Fig. 5. P are particles of material which are caused to move in the paths of the dotted semicircles by the circular oscillations of the surface on which they rest; the direction of their travel being determined by the side upon which the slats, y, are placed. These particles would move in circular paths; but, as soon as they have performed the first halves of their circular journeys, they meet the slats, y, which arrest their motion during the time they would be passing over the second halves of the circles, and only permit them to resume their journeys in the forward direction, as indicated by the arrows. By placing the slats, y, in appropriate positions, the particles can be caused to travel in any desired direction. The irregular shape and size of the particles, their friction against each other and against the sides and slats, and many other circumstances, all tend to modify the theoretical semicircular paths in which they should travel; but what is true of a single particle is also true with regard to the aggregate action of an immense number of particles when the surfaces over which they are caused to travel are sufficiently numerous, and the slats are arranged in a sufficiently complex manner, to meet all requirements. The ridges, u, turn over the material and the bridges, v, even it upon the surface of the sifters or collectors. Every particle is in turn brought in contact with some portion of the sifting surface, and the collecting surfaces, L, are for the purpose of conducting the material to certain desired parts of the remaining sifting surfaces beneath them. The longitudinal slats, x, keep the streams of material traveling in definite paths, and the arrangements of slats, x' and y, may be varied to an almost unlimited extent to adapt the machine to different sorts of material. The sifting surfaces may also be combined with the collecting or conveying surfaces in many different ways."

The drawings in the other patent in issue (No. 428,908) are as follows:

Fig. — 1 —

Robert H. Parkinson, for complainant.
Homer Morris, for defendants.

DALLAS, Circuit Judge. The defendants are charged with infringement of two patents for "apparatus for sifting and sorting flour." The first of them was granted to the complainant May 27, 1890, as No. 428,907, and reissued June 28, 1892, as No. 11,252. The second (No. 428,908) was a division of the first. The claims of reissue No. 11,252, which are sued on, are as follows:

"(1) In a chop grader, a frame having a gyrating motion, and provided with guides in line with the desired main direction of travel of the material, and cross slats, y, extending part way across its surface between said guides, for causing the material to travel over the said surface, substantially as set forth. (2) In a chop grader, a frame having a gyrating motion, and provided with a sifting surface of perforate material, the guide slats, x, upon its sifting surface, in line with the desired main direction of travel of the material, and cross slats, y, extending part way between said slats, x, for causing

the material to travel, substantially as set forth." "(4) In a chop grader, the combination, with a frame box, provided with an inlet at its upper and outlets at its lower part, of rods pivotally supporting said box, a revoluble device, such as a crank, for imparting a continuous gyrating movement to said box, and a frame supported in said box, and provided with a perforate sifting surface, and with guide slats, x, and with cross slats, y, arranged on said surface, substantially as and for the purpose set forth. (5) In a chop grader, the combination, with a gyrating frame box, of a series of superposed frames in said box, said frames being provided with guide slats, x, and cross slats, y, for directing the material over their surfaces, and with openings through which the material may pass from the upper to the lower frames of the series, substantially as and for the purpose set forth. (6) In a chop grader, the combination, with a gyrating frame box, of a series of superposed frames in said box, some of said frames being provided with perforate sifting surfaces of various fineness for sifting and grading the material, and alternating with other frames having imperforate conveying surfaces, all of the said frames being provided with guide slats, x, and cross slats, y, for causing the material to travel over their surfaces, substantially as and for the purpose set forth." "(11) A sieve having a gyrating motion, and provided with line guides in the desired main direction of travel for determining the path or paths of the stock's travel, and with propelling surfaces between the said guides for effecting the travel of the stock under the gyrating motion of the sieve."

The claims of patent No. 428,908, which are sued on, are as follows:

"(1) In a chop grader, a frame having a substantially horizontal gyrating motion, and provided with curved guides in line with the desired main direction of travel of the material, and cross slats, y, extending part way across its surface between said guides, for causing the material to travel over the said surface in substantially circular paths, as hereinbefore set forth. (2) In a chop grader, the combination, with a horizontally gyrating circular frame box, of a series of circular superposed frames in said box, the bottom surfaces of said frames being provided with curved guide slats, x, in line with the desired main direction of travel of the material, and with cross slats, y, extending part way between said guide slats, for causing said material to travel, substantially as set forth."

But for the question to be presently considered, touching the validity and construction of these patents, no doubt could reasonably be entertained that the infringement charged has been clearly proved. The evidence admits of no other conclusion, and the argument presented on behalf of the defendants rests mainly, if not solely, upon the theory that noninfringement results from the interpretation of the claims for which they contend. I will dispose of the case with reference to the points made by their brief:

1. Defendants contend, with respect to the first claim of each patent, that the "cross slats, y," designated in both of these claims, should be taken to include, and were "intended to include, the additional parts, u and v, for turning over the material and evening it," in which case the defendants' device would not infringe. But the construction thus proposed is, I think, a forced and unreasonable one. It involves the importation into the claim of language which was not used, and which must be assumed to have been designedly omitted, for in claim No. 3 (not here involved) the parts now sought to be injected into these claims, namely, the ridge, u, or bridge, v, "for turning over and evening the material," are expressly included. The learned counsel of the defendants has argued that because some of the figures exhibit u and v in connection with, and seemingly as extensions of, the part, y, the latter should be understood as being inclusive of the former; but

the patent as a whole forbids acceptance of this understanding. The cross slats, y, and the other parts referred to, are distinctively mentioned, and their respective objects are plainly differentiated. The defense as to claim 2 of patent No. 11,252 has been enforced by the same course of reasoning as that applied to the first claim of each patent; and it is insisted that it maintains the proposition that "cross slat, y, means y with u," and that, therefore, the defendants "do not infringe claims 1 and 2 of No. 11,252, or claim 1 of No. 428,-908." I am, as I have said, unable to acquiesce in the reasoning referred to, and consequently cannot adopt the deduction supposed to be derived from it.

2. The defendants have adduced several patents in support of the defense of lack of novelty, and their learned counsel has in argument especially referred to the Robertson, the Jesse, the Hahn, and the Gilbert patents, but by none of these is there disclosed the invention of the presumptively valid patents in suit. Haggenmacher unquestionably produced a device by which a marked advance in the art was attained, and the testimony of the experts and practical millers is in substantial accord as to its novelty. As was said by an expert witness for the defendants, neither of the exhibits prior to the Haggenmacher patents embraces every feature of construction along with the special motion of the latter.

3. The attack made upon the validity of the reissue cannot prevail. It is, in my opinion, fully met and overcome by the argument submitted in the brief for complainant, from which I quote:

"While one of the two patents sued upon is a reissue, it is open to none of the attacks generally made upon reissued patents. Defendants' machine is equally within the claims of the original. All the claims of the patent, except the eleventh, are literally reproduced from the original. The eleventh is predicated on the same invention as the original patent; stating that invention in terms intended to express more clearly that which would, under the ordinary doctrine of equivalents, be the legal effect of the original."

That such a reissue is within the scope of the statute is, I think, clearly demonstrated by the authorities cited on behalf of the complainant, with which those cited for the defendants do not, upon examination, appear to conflict. Reed v. Chase, 25 Fed. 94; Odell v. Stout, 22 Fed. 159; Powder Co. v. Powder Works, 98 U. S. 126; Eames v. Andrews, 122 U. S. 40, 7 Sup. Ct. 1073; Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825; Walker v. City of Terre Haute, 44 Fed. 70; Marsh v. Seymour, 97 U. S. 348. Decree for complainant.