A. Johnston & Co., Limited, *v.* American Heat Insulating Co., Limited, *et al.*

*(Circuit Court, W. D. Pennsylvania. December 3, 1891.)*

1. Patents for Inventions—Reissue—Enlargement of Claim.

The claim of the original patent was: "As a new article of manufacture, a non-conducting covering composed of layers or wrappings of paper saturated with adhesive material, and compressed while being formed into tubular sections of a thickness of one-half inch or more, substantially as shown and described." In the reissue the words, "of a thickness of one-half inch or more," were omitted; but it appeared that a covering for the designated purpose, of less thickness than one-half inch, would lack the non-conducting property, and would be inoperative and useless; that in the practice of the invention the covering is always of greater thickness, and must be; and the infringing article exceeded that thickness. *Held,* that, as the omission did not really enlarge the patentee's rights, the change was immaterial, and did not avoid the patent.

2. Same.

In the claim of the reissue, the words "or coated" were inserted after the word "saturated." *Held,* that the two words were used evidently as alternative expressions, to denote the same thing, and the claim was not broadened.

In Equity. Suit for infringement of a patent. Decree for plaintiff.

*James I. Kay* and *W. Bakewell,* for complainant.

*W. L. Pierce,* for defendant.

Before Acheson and Reed, JJ.

Acheson, J. The plaintiff, the assignee of reissued letters patent No. 8,752, dated June 10, 1879, issued to the inventor, John C. Reed, assignor, etc., sues the defendant for the infringement thereof. The invention, which is an improvement in coverings for steam-boilers and pipes, consists of a non-conducting covering, composed of layers or wrappings of paper saturated or coated with suitable adhesive material, and compressed while being formed into tubular sections, and capable of being divided longitudinally, so as to be placed around the pipes or other surfaces to be covered. The specification thus describes the method of making the covering:

"I prepare the non-conducting covering from paper, for which purpose I prefer, and generally employ, what is termed 'roofing paper,' though other kinds of paper may be used. Upon a revolving mandrel of suitable size, regulated for the purpose for which the covering is intended, and generally a section of pipe of the same diameter as the pipe to which the covering is to be applied, I wind or wrap the roofing or other paper, at the same time applying some adhesive mixture to the layers to cause adhesion, and making traction on the free end of the paper, so as to lay the wrappings firmly and smoothly. In addition to the traction, which will compact the covering, I make use of pressure by means of weighted friction bar or plate, or in other suitable manner, so as to insure a dense, firm structure throughout. This operation is continued until a covering of sufficient thickness has been applied to the pipe, when, if the covering has been formed on this pipe, (taking the place of a mandrel,) upon which it is to remain, the covering may be finished by applying a suitable coat of paint, which can be readily and rapidly done by revolving the pipe before its removal; but, if the covering has been formed on a mandrel or pipe with which it is not intended to use it, it may be coated with paint at the time, and then withdrawn from the mandrel, to be afterwards

slipped upon the tubing upon which it is to remain, or it can be cut longitudinally into sections, and applied as illustrated in the drawings, and coated with paint afterwards."

The proved advantages of this covering are that it is tough and strong, composed of a fibrous material compressed so as to form a dense, firm structure throughout; is a thorough non-conductor; can be made at one place, and transported without packing or boxing to the place where it is to be used; is not liable to breakage by falling or any ordinary blows; can be cut by tools in common use by mechanics; can be easily applied by persons of little or no mechanical skill; can be removed and replaced at will for the examination and repair of the tubing; is neat in appearance, and will not soil or damage the finest machinery or tubing to which it may be applied; and can be produced at much less cost than other coverings for the like purposes.

The claims of the reissue are two, namely:

"(1) A non-conducting covering for boilers, pipes, and other surfaces, composed of layers or wrappings of paper saturated or coated with suitable adhesive material, and compressed while being formed into tubular sections, substantially as described. (2) As a new article of manufacture, a non-conducting covering for boilers, pipes, and other surfaces, composed of layers or wrappings of paper saturated or coated with suitable adhesive material, and compressed while being formed into tubular sections divided longitudinally, so as to be placed around the pipes or other surfaces to be covered, substantially as set forth."

Defense is made that Reed's improvement was destitute of patentable novelty. To sustain this position, a great number of prior patents were introduced, which we have carefully examined. To discuss them in detail would unduly extend this opinion and subserve no good purpose. The previous state of the art is fairly disclosed in the specification of the reissued patent. We content ourselves, then, with saying that, in our judgment, none of the prior patents contains or suggests the Reed invention. The proofs entirely satisfy us that Reed's improvement was novel in a patentable sense, and of great utility. It was, indeed, a meritorious invention, and the patent should be dealt with in a liberal spirit.

Upon the question of infringement, the case is free from any doubt whatever. The defendants make and sell the identical covering described in the reissue, and made by the described method. The only difference in the methods practiced by the parties is that, whereas the plaintiff applies the liquid flour-paste to one side only of the paper, the defendant applies it to both sides; but the result is the same, and the difference in the manner of applying the adhesive mixture is wholly immaterial. Furthermore, it is perfectly clear that the defendant's covering would have infringed the original patent equally as it infringes the reissue.

But the validity of the reissued patent is contested, the defendant insisting that its claims are broader than the claim of the original patent, and that the reissue was applied for too late to warrant such an expansion, the original letters patent, No. 171,425, having been granted December 21, 1875, and the application for the reissue not filed until April 5, 1879. The original patent had one claim, as follows:

"As a new article of manufacture, a non-conducting covering composed of layers of wrappings of paper saturated with adhesive material, and compressed while being formed into tubular sections of a thickness of one-half inch or more, substantially as shown and described."

The alleged undue broadening of the patent consists in two particulars, namely—*First*, in that the words, "of a thickness of one-half inch or more," which were in the original claim, are omitted from the reissue; and, *second*, by the insertion of the new words "or coated" after the words, "layers or wrappings of paper saturated." Under the rule as now firmly settled, it must be conceded that the reissue of a patent for the sole purpose of enlarging the original claim must be applied for promptly, and that an unexplained delay of three years and three months would be unreasonable and indefensible. *Miller* v. *Brass Co.*, 104 U. S. 350. The open question here is whether, in fact, the effect of the reissue was to broaden the original claim; for, if this was not so, then the reissue is valid. *Gage* v. *Herring*, 107 U. S. 640; 2 Sup. Ct. Rep. 819; *Reed* v. *Chase*, 25 Fed. Rep. 94; *Eames* v. *Andrews*, 122 U. S. 40, 7 Sup. Ct. Rep. 1073.

Now, if we were shut up to a comparison of what merely appears on the face of the original patent and on the face of the reissue, it might seem that the omission from the latter of the words, " of a thickness of one-half inch or more," was a material change, and one prejudicial to the public. But the proofs bring us to a different conclusion. It is most clearly shown that a covering for the desired purpose, of less thickness than one-half inch, would lack the necessary non-conducting property, and would be useless, and that in the actual practice of the invention the covering is always of greater thickness. The defendant's coverings, as well as the plaintiff's, exceed that thickness, and must do so for any beneficial use. A one-half inch covering is too thin to retain the heat and prevent radiation. The thickness actually employed ranges from one inch to one and a half inches, in rare cases exceeding the latter thickness. When, therefore, we consider the art to which the invention relates, and the requirements of that art, we find that the mention in the original patent of "a thickness of one-half inch or more" was merely of a feature essential to a non-conducting covering. In the nature of the case, it would have been implied, in the absence of express statement. Observe, the original specification spoke of the covering as a "thorough non-conductor;" described the method of manufacture "to insure a firm, dense structure throughout;" and directed that the winding operation be continued until a covering "of sufficient thickness" has been obtained. Manifestly, this meant a sufficient thickness to obtain the non-conducting property, and to any one skilled in the art it would be obvious that for this a thickness of at least one-half inch was necessary. A change in the form of expression which possibly might be interpreted as extending the scope of a patent to inoperative and useless things could scarcely be deemed a broadening of the claim. But such a construction is rather to be avoided. The equity of the case requires the court to regard practical results, and, if these are to control, then plainly the omission

from the reissue of the words, "of a thickness of one-half inch or more," did not really enlarge the rights of the patentee, or abridge the rights of the public. Hence the case is without the reason of the rule which prevailed in *Miller* v. *Brass Co., supra,* and other like cases. Undoubtedly the invention described in the reissue is the same invention described in the original patent, and we think the claim of the original and the first claim of the reissue are substantially identical, notwithstanding the omission in the latter of any reference to the thickness of the tubular sections. This view, it seems to us, is fully warranted by the reasoning and conclusion of the supreme court upon the subject of reissues, as expressed in *Eames* v. *Andrews, supra.*

With respect to the introduction into the claims of the words "or coated," we have no difficulty. Evidently "saturated" and "coated" are used as alternative expressions, to designate the same thing. To understand the meaning which the patentee attached to the word "saturated," we are to look into the specification, which, both in the original and the reissue, directs the "applying some adhesive mixture to the layers to cause adhesion." Beyond any question, it is to this application or coating the patentee refers by the term "saturated." "Saturated with adhesive material" is the exact language. Possibly he might have chosen a more apt word; but, if he made a wrong selection, the slip is not fatal. No one reading the specification can fail to discern his meaning. However, it is satisfactorily shown that while the gluten and starch of the paste, applied as directed by the patent, do not penetrate through the paper, the moisture does permeate it. So that there is saturation resulting from the application of the adhesive mixture and the compression which follows.

As to the second claim of the reissue, little need be said. If no expansion of the original claim is to be found in the first claim of the reissue, surely there is none in the second claim, for it contains a limitation not in the original claim, by reason of the introduction of the words "divided longitudinally" after the words "tubular sections." Let a decree be drawn in favor of the plaintiff.