### SUDDARD v. AMERICAN MOTOR CO. et al.

(Circuit Court, D. Massachusetts. August 13, 1908.)

#### No. 295.

PATENTS—SUIT FOR INFRINGEMENT—COSTS.

Under Rev. St. § 4922 (U. S. Comp. St. 1901, p. 3396), where more than one claim of a patent is sued on in a bill in equity to restrain infringement, and one claim is held void, although others may be held valid and infringed, complainant is not entitled to recover costs; nor is he entitled to a decree, except on filing a disclaimer of the void claim, which otherwise invalidates the entire patent, and the better practice is to require such disclaimer to be filed before final decree.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 608.]

In Equity.

Horatio E. Bellows, for complainant.

Robert W. Frost, for defendants.

LOWELL, Circuit Judge. This was a bill in equity to restrain the infringement of a patent. Several claims were in suit, of which one was found to be valid and infringed. An injunction was issued restraining further infringement, and the question here presented concerns only the costs in the case. The defendant contends that the allowance of costs to the complainant is forbidden by Rev. St. § 4922 (U. S. Comp. St. 1901, p. 3396), which reads as follows:

"Whenever, through inadvertence, accident, or mistake, and without any willful default or intent to defraud or mislead the public, a patentee has, in his specification, claimed to be the original and first inventor or discoverer of any material or substantial part of the thing patented, of which he was not the original and first inventor or discoverer, every such patentee, his executors, administrators, and assigns, whether of the whole or any sectional interest in the patent, may maintain a suit at law or in equity, for the infringement of any part thereof, which was bona fide his own, if it is a material and substantial part of the thing patented, and definitely distinguishable from the parts claimed without right, notwithstanding the specifications may embrace more than that of which the patentee was the first inventor or discoverer. But in every such case in which a judgment or decree shall be rendered for the plaintiff no costs shall be recovered unless the proper

disclaimer has been entered at the Patent Office before the commencement of the suit. But no patentee shall be entitled to the benefits of this section if he has unreasonably neglected or delayed to enter a disclaimer."

To construe that section, its history must be examined carefully. The original patent act (Act April 10, 1790, c. 7, § 2, 1 Stat. 109) provided that the application for a patent should contain a "specification in writing containing a description." As distinguished from the specification, neither the application nor the patent contained any "claim," and the scope of the patent was gathered from the specification. Anything corresponding to the modern multiplicity of claims was impossible. In Lowell v. Lewis, 1 Mason, 182, Fed. Cas. No. 8,568, Mr. Justice Story said:

"By the common law, if anything material to the construction of the thing invented be omitted or concealed in the specification, or more be inserted or added than is necessary to produce the required effect, the patent is void. This doctrine of the common law our patent act has (whether wisely admits of very serious doubts) materially altered; for it does not avoid the patent in such case, unless the 'concealment or addition shall fully appear to have been made for the purpose of deceiving the public.' Section 6. Yet certainly the public may be as seriously injured by a materially defective specification resulting from mere accident as if it resulted from a fraudulent design." Barnes v. Ryder, Fed. Cas. No. 1,020; Barnes v. Steamship Co., Fed. Cas. No. 1,021.

Section 6 of the act of 1790 read as follows:

"And be it further enacted, that in all actions to be brought by such patentee or patentees, his, her, or their executors, administrators or assigns, for any penalty incurred by virtue of this act, the said patents or specifications shall be prima facie evidence, that the said patentee or patentees was or were the first and true inventor or inventors, discoverer or discoverers of the thing so specified, and that the same is truly specified; but that nevertheless the defendant or defendants may plead the general issue, and give this act, and any special matter whereof notice in writing shall have been given to the plaintiff, or his attorney, thirty days before the trial, in evidence, tending to prove that the specification filed by the plaintiff does not contain the whole of the truth concerning his invention or discovery, or that it contains more than is necessary to produce the effect described; and if the concealment of part, or the addition of more than is necessary, shall appear to have been intended to mislead, or shall actually mislead the public, so as the effect described cannot be produced by the means specified, then, and in such cases, the verdict and judgment shall be for the defendant."

The provisions of section 6 were not intended to narrow the common-law rights of a patentee, but to enlarge them, and to limit the rights of an alleged infringer. In certain cases a patent which was too broad, and so was wholly invalid at common law, was yet validated as to that part of it which covered a patentable invention made by the patentee.

By Act Feb. 21, 1793, c. 11, 1 Stat. 318, it was provided that the application should contain "a written description." This is evidently the "specification" of the act of 1790, and the act of 1793 provided for no "claim," as distinguished therefrom. The patent could neither claim nor cover more than one invention. In section 6 the act provided that the defendant in an infringement suit should prevail if the "specification" does not contain the whole truth relating to his (the patentee's) discovery, or contains more than is necessary to pro-

duce the desired effect, which concealment or addition shall fully appear to be made for the purpose of deceiving the public. It will be noticed that this section somewhat further enlarged the common-law rights of an inventor whose specification had been made too broad. Deception of the public without intent to deceive no longer invalidated an overbroad patent.

Act July 4, 1836, c. 357, 5 Stat. 117, first differentiated in our patent law the claim and the specification, though not expressly. Section 6 provided that the application should contain a written description of the invention, "and shall particularly specify and point out the part, improvement or combination which he claims as his own invention or discovery." Thereafter a patent might contain more than one claim. Railroad Co. v. Mellon, 104 U. S. 112, 26 L. Ed. 639. There was thus established a system of patent law supposed to relate to the old form of patent with its single claim, but made in express terms to apply to the modern patent of many claims. The statutes were meant for the first condition, but they became applicable to the second.

Section 15 of the act of 1836 corresponded to section 6 of the act of 1793. It is passed over here, because it was replaced almost immediately by Act March 3, 1837, c. 45, 5 Stat. 193, 194. Sections 7 and 9 of that act read as follows:

"Sec. 7. And be it further enacted, that, whenever any patentee shall have, through inadvertence, accident, or mistake, made his specification of claim too broad, claiming more than that of which he was the original or first inventor, some material and substantial part of the thing patented being truly and justly his own, any such patentee, his administrators, executors, and assigns, whether of the whole or of a sectional interest therein, may make disclaimer of such parts of the thing patented as the disclaimant shall not claim to hold by virtue of the patent or assignment, stating therein the extent of his interest in such patent, which disclaimer shall be in writing, attested by one or more witnesses, and recorded in the Patent Office, on payment by the person disclaiming, in manner as other patent duties are required by law to be paid, of the sum of ten dollars. And such disclaimer shall thereafter be taken and considered as part of the original specification, to the extent of the interest which shall be possessed in the patent or right secured thereby, by the disclaimant, and by those claiming by or under him subsequent to the record thereof. But no such disclaimer shall affect any action pending at the time of its being filed, except so far as may relate to the question of unreasonable neglect or delay in filing the same."

"Sec. 9. And be it further enacted, anything in the fifteenth section of the act to which this is additional to the contrary notwithstanding, that, whenever, by mistake, accident, or inadvertence, and without any willful default or intent to defraud or mislead the public, any patentee shall have in his specification claimed to be the original and first inventor or discoverer of any material or substantial part of the thing patented, of which he was not the first and original inventor, and shall have no legal or just right to claim the same, in every such case the patent shall be deemed good and valid for so much of the invention or discovery as shall be truly and bona fide his own: Provided, it shall be a material and substantial part of the thing patented, and be definitely distinguishable from the other parts so claimed without right as aforesaid. And every such patentee, his executors, administrators, and assigns, whether of the whole or of a sectional interest therein, shall be entitled to maintain a suit at law or in equity on such patent for any infringement of such part of the invention or discovery as shall be bona fide his own as aforesaid, notwithstanding the specification may embrace more than he shall have any legal right to claim. But, in every such case in which

a judgment or verdict shall be rendered for the plaintiff, he shall not be entitled to recover costs against the defendant unless he shall have entered at the Patent Office, prior to the commencement of the suit, a disclaimer of all that part of the thing patented which he has so claimed without right: Provided, however, that no person bringing any such suit shall be entitled to the benefits of the provisions contained in this section, who shall have unreasonably neglected or delayed to enter at the Patent Office a disclaimer as aforesaid."

This law was intended to aid further the inventor whose patent was too broadly expressed. The newly authorized disclaimer enabled him to amend the patent by an easier and speedier process than that of surrender and reissue under section 13 of the act of 1836. If the disclaimer was filed before suit was brought, the defect was completely cured. If it was filed after suit was brought, but without unreasonable delay, the patentee might recover, but got no costs. Rev. St. §§ 4917, 4922 (U. S. Comp. St. 1901 pp. 3393, 3396, are descended from the act of 1837 through Act July 8, 1870, c. 230, §§ 53, 54, 16 Stat. 205, 206. Yet in modern patent practice the disclaimer first authorized by the act of 1837 has been to some extent superseded by the introduction of many claims, variously worded, but intended to describe the same invention, so that, if one claim shall fail by its excessive breadth or otherwise, other claims will be at hand to take its place. In the old practice the patentee brought suit on his patent. Now he brings suit on certain claims of his patent. With the rest of them he does not concern himself.

The Supreme Court first came to construe the acts of 1836 and 1837 before the patent of many claims was fully developed and recognized. In O'Reilly v. Morse, 15 How. 62, 120, 14 L. Ed. 601, the eighth claim of a patent was held invalid. The court went on to observe:

"The patent, then, being illegal and void, so far as respects the eighth claim, the question arises whether the whole patent is void, unless this portion of it is disclaimed in a reasonable time, after the patent issued.

"It has been urged, on the part of the complainants, that there is no necessity for a disclaimer in a case of this kind. That it is required in those cases only in which the party commits an error in fact, in claiming something which was known before, and of which he was not the first discoverer; that in this case he was the first to discover that the motive power of electro-magnetism might be used to write at a distance; and that his error, if any, was a mistake in law, in supposing his invention, as described in his specification, authorized this broad claim of exclusive privilege; and that the claim, therefore, may be regarded as a nullity, and allowed to stand in the patent without a disclaimer, and without affecting the validity of the patent.

"This distinction can hardly be maintained. The act of Congress above recited requires that the invention shall be so described that a person skilled in the science to which it appertains, or with which it is most nearly connected, shall be able to construct the improvement from the description given by the inventor.

"Now, in this case, there is no description but one of a process by which signs or letters may be printed at a distance. And yet he claims the exclusive right to any other mode and any other process, although not described by him, by which the end can be accomplished, if electro-magnetism is used as the motive power; that is to say, he claims a patent for an effect produced by the use of electro-magnetism distinct from the process or machinery necessary to produce it. The words of the acts of Congress above quoted show that no patent can lawfully issue upon such a claim; for he

claims what he has not described in the manner required by law, and a patent for such a claim is as strongly forbidden by the act of Congress as if some other person had invented it before him.

"Why, therefore, should he be required and permitted to disclaim in the one case and not in the other? The evil is the same if he claims more than he has invented, although no other person has invented it before him. He prevents others from attempting to improve upon the manner and process which he has described in his specification, and may deter the public from using it, even if discovered. He can lawfully claim only what he has invented and described, and if he claims more his patent is void. And the judgment in this case must be against the patentee, unless he is within the act of Congress which gives the right to disclaim. .

"The law which requires and permits him to disclaim is not penal, but remedial. It is intended for the protection of the patentee, as well as the public, and ought not, therefore, to receive a construction that would restrict its operation within narrower limits than its words fairly import. It provides 'that when any patentee shall have in his specification claimed to be the first and original inventor and discoverer of any material, or substantial part of the thing patented of which he was not the first and original inventor, and shall have no legal or just claim to the same,' he must disclaim in order to protect so much of the claim as is legally patented.

"Whether, therefore, the patent is illegal in part because he claims more than he has sufficiently described, or more than he invented, he must in either case disclaim, in order to save the portion to which he is entitled; and he is allowed to do so when the error was committed by mistake.

"A different construction would be unjust to the public, as well as to the patentee, and defeat the manifest object of the law, and produce the very evil against which it intended to guard.

"It appears that no disclaimer has yet been entered at the Patent Office; but the delay in entering it is not unreasonable, for the objectionable claim was sanctioned by the head of the office, it has been held to be valid by a Circuit Court, and differences of opinion in relation to it are found to exist among the justices of this court. Under such circumstances the patentee had a right to insist upon it, and not disclaim it until the highest court to which it could be carried had pronounced its judgment. The omission to disclaim, therefore, does not render the patent altogether void; and he is entitled to proceed in this suit for an infringment of that part of his invention which is legally claimed and described. But, as no disclaimer was entered in the Patent Office before this suit was instituted, he cannot, under the act of Congress, be allowed costs against the wrongdoers, although the infringement should be proved."

The entire reasoning is here quoted in order that the position of the Supreme Court may be fully understood. That court held (1) that an invalid claim, unless seasonably disclaimed, invalidated the entire patent, and therefore, (2) even though duly disclaimed after suit brought, yet prevented the patentee from recovering costs. Seymour v. McCormick, 19 How. 96, 15 L. Ed. 557, in the language of its opinion, followed O'Reilly v. Morse in denying the plaintiff costs. The court there recognized that the disclaimer must often be postponed until after the final decision of the appellate court. Until that time the invalid claim may be in litigation.

Gage v. Herring, 107 U. S. 640, 2 Sup. Ct. 819, 27 L. Ed. 601, was decided in 1882, when letters patent did not essentially differ from their present form. In delivering the opinion of the court Mr. Justice Gray said:

"The invalidity of the new claim in the reissue does not, indeed, impair the validity of the original claim, which is repeated and separately stated in the reissued patent. Under the provisions of the patent act, whenever through inadvertence, accident, or mistake, and without any willful default or intent

to defraud or mislead the public, a patentee in his specification has claimed more than that of which he was the original and first inventor or discoverer, his patent is valid for all that part which is truly and justly his own, provided the same is a material and substantial part of the thing patented, and definitely distinguishable from the parts claimed without right; and the patentee, upon seasonably recording in the Patent Office a disclaimer in writing of the parts which he did not invent, or to which he has no valid claim, may maintain a suit upon that part which he is entitled to hold, although in a suit brought before the disclaimer he cannot recover costs. * * * The plaintiffs, upon filing a disclaimer of the new one, are entitled to a decree, without costs, for the infringement of the old and valid claim." 107 U. S. 646, 2 Sup. Ct. 824, 27 L. Ed. 601.

The court here recognized the need of a disclaimer to validate the patent, and denied the complainant costs where an invalid claim had been found in the patent. Other cases more or less authoritative are to the same effect. Smith v. Nichols, 21 Wall. 112, 117, 22 L. Ed. 566; Sessions v. Romadka, 145 U. S. 29, 41, 12 Sup. Ct. 799, 36 L. Ed. 609; Burdett v. Estey (C. C.) 19 Blatchf. 1, 7, 3 Fed. 566; Coburn v. Schroeder (C. C.) 19 Blatchf. 377, 8 Fed. 519; Hake v. Brown (C. C.) 37 Fed. 783, 785; Draper v. Wattles (C. C.) 81 Fed. 374; Metallic Ext. Co. v. Brown, 110 Fed. 665, 49 C. C. A. 147; Fairbanks v. Stickney, 123 Fed. 79, 59 C. C. A. 209. If there be anything to the contrary in National Elec. Co. v. De Forest Tel. Co. (C. C.) 140 Fed. 449, 455, it is opposed to the weight of authority.

For many purposes, however, courts have come to treat the several claims in one patent as if they were separate patents. Thus in Gamewell v. Municipal Signal Co., 77 Fed. 490, 23 C. C. A. 250, it was said:

"The bill of complaint charged generally infringement, but it in no particular indicated what special claims were infringed. The answer was equally general in its denials. It also, in general terms and without any specification, averred that a disclaimer was necessary. As the cause proceeded, the complainants limited their issues to claim 1 of the patent. No other claim was submitted to the judgment of the court, or passed on by it."

The defendant objected to the payment of costs, as no disclaimer had been entered. If any claim of the patent was invalid, according to the doctrine of O'Reilly v. Morse, the whole patent was invalid without a disclaimer, and if a disclaimer was filed the complainant lost his costs. The court said:

"There was nothing on record to show that any claims in the patent needed to be disclaimed within the purview of those provisions, and the court had not been asked to pass on any claims except the first one, even if it could have been required to do so merely for a matter of costs."

The final decree sometimes does not mention the needed disclaimer; but it is made necessary by the statute, and, unless it is seasonably entered, the complainant may lose the benefit of his otherwise successful litigation. It is proper to notice the disclaimer in the decree, and to require its filing before the final decree is entered.

The court has not here to decide if a defendant, answering to a bill of complaint which is specifically limited to certain claims of a patent, may set up the invalidity of other claims not "in suit," in order to escape the payment of costs. The statutes seem broad enough to admit this defense, but the question may be left for decision when it

arises. In the case at bar it is enough to hold that where a court finds that one claim sued upon is invalid and another claim is valid, so that the complainant obtains a decree, he is yet to be deprived of costs by force of the statute as interpreted by the courts.